UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

A.E. and E.W.,

    Plaintiffs,

v.                                           CIVIL ACTION NO: 3:17-cv-01885
                                            JUDGE:

JOSHUA NIELD;
CITY OF HUNTINGTON, WEST VIRGINIA; and
JOHN DOES 1–7, INDIVIDUALS,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## CITY OF HUNTINGTON'S MOTION FOR PARTIAL DISMISSAL

Defendant, the City of Huntington ("the City"), by counsel, Lee Murray Hall, Nathanial A. Kuratomi, and Jenkins Fenstermaker, PLLC, submits the following Memorandum of Law in Support of the Motion for Partial Dismissal being filed contemporaneously herewith. Plaintiffs assert multiple claims against the City, including claims under 42 U.S.C. § 1983 and state common law claims for Assault, Battery, False Imprisonment, and punitive damages.

As discussed in greater detail below, Counts Four and Six[1] of plaintiffs' Complaint should be dismissed as against the City because the City is immune from state common law claims for Assault, Battery, and False Imprisonment under W. Va. Code § 29-12A-4. Further, plaintiffs cannot recover punitive damages against the City for any state law claim pursuant to W.Va. Code §29-12A-7(a).

---

[1] Plaintiffs' Complaint asserts two separate "Fifth Causes of Action." This Motion address the second such Cause of Action for "False Arrest/Imprisonment" found at paragraphs 65-71 of the Complaint and refers to the same as "Count Six."

1

I.   INTRODUCTION

Plaintiffs A.E. and E.W., through counsel, filed a Civil Complaint against Joshua Nield, the City, and John Does 1–7 in this Court, asserting multiple claims arising from an incident that occurred on or about the evening of March 14, 2015. Plaintiffs contend they were first encountered by Joshua Nield as they entered Stonewall, a nightclub in Huntington, West Virginia.  ECF No. 1 at ¶¶ 9–10. After plaintiffs left the bar, Defendant Nield followed them to the McDonald's on 5th Avenue in his patrol car, turned on his emergency lights, and threatened to arrest them for DUI. *Id.* at ¶¶ 11–13. Plaintiffs allege that Nield stated, "I'll make a deal with you, if you come across the street to Long John Silver's [sic] (Captain D's), I won't arrest you for DUI." *Id.* at ¶ 13. The plaintiffs agreed, and soon after arrived in the Long John Silver's parking lot where Defendant Nield approached their vehicle and instructed them to exit the vehicle. *Id.* at ¶¶ 14–15.

Plaintiffs contend that Nield said they would have to "do stuff" in order to avoid jail, such as perform the Macarena and/or the little teapot dance. *Id.* at ¶ 15. Plaintiffs allege that they complied.  *Id.* at ¶ 16. Nield then ordered both plaintiffs to put their hands behind their backs while he placed them in handcuffs and rubbed his body against their bodies.  *Id.* at ¶ 17. The Complaint alleges that when plaintiffs asked whether he should read their Miranda rights, he responded that it was not necessary. *Id.* at ¶ 18.

Plaintiffs allege Defendant Nield instructed A.E. to take her keys and get into the police car. *Id.* at ¶ 18. Both plaintiffs climbed into the passenger seat of the cruiser, with E.W. closest to Nield. *Id.* Plaintiffs contend that Nield began driving the plaintiffs around Huntington at excessive speeds while "rubb[ing] the Plaintiffs' legs, breasts and other private areas." *Id.* at ¶ 19. With plaintiffs in the car, Nield is alleged to have stopped his cruiser at multiple locations in

2

Huntington where plaintiffs contend that Nield performed a number of acts including fondling plaintiffs' breasts, attempting penetration, attempting to kiss plaintiffs, and removing their pants and vaginally penetrating one of the plaintiffs with his hand and fingers. *Id.* at ¶¶ 20–22.

The Complaint contends that the encounter ended when Defendant Nield eventually returned Plaintiffs to A.E.'s car. *Id.* at ¶ 23–24. They exited the vehicle and Defendant Nield instructed E.W. to give him a kiss. *Id.* at ¶ 24. Based on these facts, plaintiffs assert claims under 42 U.S.C.A. §1983 against the City, as well as state law claims for Assault, Battery, and False Imprisonment, and seek an award of punitive damages.

Plaintiffs' claims for Assault, Battery, False Imprisonment, and punitive damages, should be dismissed as against the City because the City is immune from such claims under the West Virginia Tort Claims and Insurance Reform Act, W.Va. Code §29-12A-1 *et seq* ("WVTCIRA").

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. All facts asserted in a complaint, if well-pleaded, will be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations," the Court should assume them to be true and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, in order to survive a motion to dismiss, the complaint must state "a plausible claim for relief." *Id.* at 679.

Even if the allegations in the Complaint are taken as true for purposes of this motion, the allegations contained in Counts Four and Six fail to state a claim upon which relief may be granted, and as such, these claims fail as a matter of law and should be dismissed as against the City as should any claim plaintiffs make for punitive damages based on any state law claim.

### III. ARGUMENT

#### The City Is Immune From Plaintiffs' State Law Claims Arising From The Allegedly Intentional Conduct of Joshua Nield And Punitive Damages.

Plaintiffs assert multiple claims under West Virginia law, including causes of action for Assault and Battery, ECF No. 1 at ¶¶48-55, and False Imprisonment, *Id.* at ¶¶65-71. Pursuant to the WVTCIRA, the City is statutorily immune from such claims and the same should be dismissed as against the City.

The WVTCIRA provides that a political subdivision[2] is generally immune from civil liability except for claims arising from the negligence of a political subdivision's employee occurring within the scope of employment. W. Va. Code § 29-12A-4(c)(2). In the same regard, by only specifying that a political subdivision is liable for an employee's negligent acts, the WVTCIRA excludes liability for a political subdivision based on an employee's intentional acts. W. Va. Code § 29-12A-4(b)(1), (c)(2).

There can be no dispute that the City is immune from plaintiffs' claims for Assault, Battery, and False Imprisonment. The Complaint, on its face, makes clear that plaintiffs allege damages as a result of the intentional conduct of Joshua Nield – not that Joshua Nield acted in a negligent manner while working within the scope of his employment. Specifically, plaintiffs contend that Nield initiated a traffic stop after following the plaintiffs from the Stonewall where he had encountered them earlier that night; that Nield induced them to meet him on the parking lot of Captain D's by promising not to arrest them; that Nield instructed plaintiffs to "do the Macarena and the little tea pot dance" to avoid charges; that Nield handcuffed plaintiffs and rubbed his body against theirs; that Nield instructed plaintiffs to get into his cruiser; and that on

---

[2] There is no dispute that Huntington is a "political subdivision" within the meaning of the WVTCIRA and is afforded all of the immunities and protections from civil claims contained therein.

multiple occasions, Nield kissed plaintiffs and fondled plaintiffs' legs, breasts, and other private areas.  ECF No. 1 at ¶¶11-24.

There is no way that these allegations, if taken as true, could be construed as anything other than intentional conduct on the part of Nield.  Plaintiffs do not allege that Nield was mistaken as to the basis for the traffic stop or that Nield accidentally touched plaintiffs.  It is clear that the underlying facts demonstrate intentional conduct on the part of Nield and that such conduct cannot serve as the basis for vicarious liability under the WVTCIRA.

In fact, in order for plaintiffs to prevail on these claims for Assault, Battery, and False Imprisonment, plaintiffs must demonstrate that Nield's conduct was **intentional**.  In West Virginia, a person is liable to another for civil assault if "(a) he acts **intending** to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension." *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004) (quoting RESTATEMENT (SECOND) OF TORTS § 21 (1965)) (emphasis added).

Similarly, a person is liable for civil battery if "(a) he acts **intending** to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Stanley*, 602 S.E.2d at 494 (quoting RESTATEMENT (SECOND) OF TORTS § 13) (emphasis added).

Likewise, liability for False Imprisonment may be found only if plaintiffs prove (1) the detention of the person, (2) unlawfulness in the detention and restraint, and (3) an **intent** to imprison and an absence of a lawful process.  *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996).

By definition, Assault, Battery, and False Imprisonment are intentional torts. The WVTCIRA provides that the City may only be held vicariously liable for the negligence of its employees committed within the scope of employment and otherwise confers immunity on the City for claims arising from intentional conduct. W.Va. Code §29-12A-4(b)(1), (c)(2).

Similarly, the WVTCIRA bars plaintiffs from receiving an award of punitive damages:

[I]n an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:

(a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.

W.Va. Code §29-12A-7(a).

Based on the plain terms of the WVTCIRA, plaintiffs may not recover punitive damages from the City for any West Virginia state law claim. As such, plaintiffs' claims for punitive damages arising from state law claims should also be dismissed as against the City.

## IV. CONCLUSION

Plaintiffs' claims for Assault, Battery, False Imprisonment, and punitive damages as set forth in Counts Four and Six and elsewhere in the Complaint fail to state a claim upon which relief may be granted. The WVTCIRA is clear that the City is immune from claims based on the intentional conduct of its employees. Further, the WVTCIRA bars an award of punitive damages based on state law claims. Accordingly, Counts Four and Six and plaintiffs' claim for punitive damages cannot survive a Motion to Dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and should be dismissed with prejudice.

**THE CITY OF HUNTINGTON**

**By Counsel**

/s/ Nathanial A. Kuratomi
Lee Murray Hall, Esquire (WV Bar #6447)
Nathanial A. Kuratomi, Esquire (WV Bar #10328)
JENKINS FENSTERMAKER, PLLC
Post Office Box 2688
Huntington, West Virginia  25726-2688
(304) 523-2100
(304) 523-2347 *fax*
lmh@jenkinsfenstermaker.com
nak@jenkinsfenstermaker.com