UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

A.E. and E.W.,

    *Plaintiffs*,

vs.                                                    CIVIL ACTION NO: 3:17-cv-01885
                                                           JUDGE: Robert C. Chambers

JOSHUA NIELD;
CITY OF HUNTINGTON, WEST VIRGINIA; and
JOHN DOES 1-7, INDIVIDUALS,

    *Defendants*.

**AMENDED CIVIL COMPLAINT**

NOW COME the Plaintiffs, A.E. and E.W.[1], by and through counsel, Timothy L. Eves and Omar D. Ahmad of Eves Law Firm, PLLC, and for their amended civil complaint against the Defendants, City of Huntington, Joshua Nield, and John Does 1-7, hereby allege and state as follows:

This is a lawsuit pursuant to 42 U.S.C. § 1983, the Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1, et seq., and the common law of West Virginia, for declaratory, injunctive and monetary relief against all Defendants for the unlawful and unconstitutional treatment of Plaintiffs. Upon information and belief, which will likely have support after a reasonable opportunity for discovery, Defendant Joshua Nield, in his individual and official capacity as a Huntington police officer, unlawfully and

---

[1] In accordance with the practice of the Supreme Court of Appeals of West Virginia in "cases involving sensitive matters", Plaintiffs are identified throughout the Complaint by their initials, "A.E." and "E.W." *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

negligently, with no probable cause or reasonable suspicion of criminal activity, falsely arrested and injured Plaintiffs physically and emotionally when they had done nothing to warrant such treatment, leaving them intimidated and humiliated.

In the manner described herein, Defendants, acting under the color of state law, targeted, stopped, detained, harassed, threatened, intimidated, and physically injured Plaintiffs without reasonable suspicion or probable cause and under circumstances where no reasonable police officer would have believed that the Plaintiffs had engaged in any unlawful conduct. Defendant's actions were intentional and violated the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, as well as the West Virginia Constitution and West Virginia common law. Plaintiffs are seeking compensatory damages, including damages under W.Va. Code § 29-12-5, as well as punitive damages against Defendant Joshua Nield. Additionally, Plaintiffs seek declaratory and injunctive relief requiring the Defendants to desist from and remedy their illegal practices.

## JURISDICTION AND VENUE

1.  This is a civil action under 42 U.S.C. §1983 seeking damages against the Defendants for actions committed under color of law with the purpose of depriving Plaintiffs of their rights under the Constitution and laws of the United States and West Virginia;

2.  This is an action for damages in excess of the $75,000.00 jurisdictional limit of this Court;

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 by virtue of the fact that this cause of action involves a violation of codified federal law and the Constitutional rights of the Plaintiffs;

## PARTIES

4. Plaintiff A.E. is currently a resident of the City of Wayne, Wayne County, West Virginia;

5. Plaintiff E.W. is currently a resident of the City of Wayne, Wayne County, West Virginia;

6. At all times hereinafter mentioned and at the time of the incident complained of, the Defendant, Joshua Nield, was a law enforcement officer with the City of Huntington and a resident of Cabell County, West Virginia;

7. At all times hereinafter mentioned and at the time of the incident complained of, the Defendant, City of Huntington, was and is a political subdivision of the State of West Virginia, existing under the laws of the State of West Virginia, and the employer of Defendant Nield;

8. Defendant John Does 1-7 represent unknown individuals who may have caused or contributed to the events underlying this Complaint; however, their identities remain unknown at the time of the filing of this civil action.

## FACTUAL ALLEGATIONS

9. On or about the evening of March 14, 2015, Plaintiffs A.E. and E.W. visited the Stonewall, a nightclub in Huntington, Cabell County, West Virginia;

10. At the time and place aforesaid, the Defendant, Joshua Nield, was an on-duty Huntington Police Officer assigned to patrol the area around Stonewall. Defendant Nield, in full police uniform and armed with a service weapon, was parked outside the Stonewall as Plaintiffs entered the bar. When he saw the Plaintiffs entering the bar, Defendant Neild shouted to the girls "alcohol is always the answer";

11. A.E. and E.W. eventually departed the Stonewall by vehicle and proceeded on 5th Avenue to the McDonald's located on 5th Avenue. Plaintiffs noticed that when they left the Stonewall parking lot, Defendant Nield followed them in his cruiser;

12. Defendant Nield followed the Plaintiffs in his patrol car until they reached and turned into the McDonald's, at which time he turned on his emergency lights and stopped the Plaintiffs;

13. During this time, Defendant Nield threatened to arrest the Plaintiffs on DUI charges without sufficient evidence. Defendant Nield then said "why don't you [E.W.] get in my car and you [A.E.] go get the food." The Plaintiffs initially declined this request, to which Defendant Nield replied "I'll make a deal with you: if you come across the street to Long John Silver's [sic] (Captain D's), I won't arrest you for DUI";

14. In fear for their safety, Plaintiffs agreed to meet Defendant Nield in the Long John Silver's parking lot after they went throught the McDonald's drive thru. After A.E. parked the vehicle, Defendant Nield parked beside them, exited the vehicle, and approached A.E.'s window on the driver's side;

15. After a brief conversaion, Defendant Nield instructed the Plaintiffs to exit the vehicle. While standing outside the car in a steady rain, Defendant Nield informed Plaintiffs that they would have to "do stuff" in order to avoid going to jail. Defendant Nield instructed the Plaintiffs to "do the macarena and the little tea pot dance" in order to avoid DUI charges;

16. Unsure of what to do, the Plaintiffs complied. Both Plaintiffs did the macarena, while E.W. mimicked a tea pot. Defendant Nield responded "that's the sexiest little teapot I've ever seen";

17. At this point, Defendant Nield's tone changed, and he ordered both Plaintiffs to put their hands on the car, then behind their back. Defendant Nield then placed them both in separate pairs of handcuffs, rubbing his genetalia against each of them during the process. Defendant Nield then said "how does it feel to be completely and utterly restrained?", continuing to press his genetalia and body against the Plaintiffs as he tugged tighter on the handcuffs;

18. During the course of this interaction, E.W. asked Defendant Nield if he was required to read the Plaintiffs their Miranda rights, to which Defendant Nield responded "that's not necessary" and "you don't always have to do that." Defendant Nield then

4

instructed A.E. to take the keys out of the ignition of her car and get into his cruiser. Both of the Plaintiffs got into the front passenger seat of Defendant Nield's cruiser together, with E.W. seated closest to Defendant Nield;

19. Defendant Nield then proceeded to drive the Plaintiffs around Huntington recklessly and at excessive speeds while running red lights. While driving, Defendant Nield rubbed the Plaintiff's legs, breasts and other private areas;

20. During the course of this drive, Defendant Nield stopped at two different isolated areas. The first location where Defendant Nield stopped was a tractor trailer yard near the Kroger grocery store on 5th Avenue. Defendant Nield exited the cruiser, went to the passenger side and opened the door. He then began fondling the Plaintiffs' breasts and attempted penetration on A.E.;

21. After approximately 10 to 15 minutes at this location, Defendant Nield got back into the driver side and began driving again. He began travelling through back-alleys and side streets, running red lights on 5th Avenue and Route 60. During this time, Defendant Nield continued to fondle the Plaintiffs and tried to kiss them;

22. Defendant Nield then took the Plaintiffs to a second location, a warehouse/storage facility near Huntington Physical Therapy on 5th Avenue. He again exited the cruiser and went to the passenger side, where he resumed fondling the Plaintiffs. Defendant Nield then placed A.E. in the back seat of his cruiser and proceeded to remove her pants and underwear. He then, without consent, vaginally penetrated A.E. with his hand and fingers;

23. Defendant Nield then returned to the driver's side of the cruiser and began driving around Huntington again. He drove for approximately 15 more minutes in the area of Village Apartments behind Chipotle on 5th Avenue;

24. Defendant Nield eventually drove Plaintiffs back to A.E.'s car. The Plaintiffs exited the cruiser and proceeded to their vehicle when Defendant Nield called E.W. back to his cruiser and demanded that she give him a kiss. The Plaintiffs then departed the scene;

25. On or about the evening of March 15, 2015, Plaintiffs returned to the Stonewall, but not for the purposes of entering the bar, but rather to park the car in the

parking lot and talk. Shortly after A.E. parked, Defendant Nield, dressed in full police uniform and armed, arrived and parked his cruiser behind the Plaintiffs' car in a way that blocked their ability to leave;

26. Defendant Nield then approached the passenger side window where E.W. was seated. E.W. pretended to be engaged in a cellular telephone call in order to avoid speaking with Defendant Nield;

27. Plaintiffs then told Defendant Nield that they had to go home because A.E.'s father was becoming angry. Defendant Nield then said to Plaintiffs "you guys are nothing but trouble", got into his cruiser and drove away;

28. On or about the evening of March 16, 2015, A.E., driving the same car used in both of the previous Stonewall encounters, drove with a friend to Rotary Park in Huntington and parked in the lot at the top of the hill. Shortly after arriving, a white sedan appeared and passed A.E.'s parked car at a high rate of speed, stopped, and then left the parking area;

29. Approximately 15 minutes later, the white sedan returned, stopped and shined lights into A.E.'s car. Defendant Nield exited the sedan with a flashlight, opened the driver door of A.E.'s vehicle and ordered her to step out of the vehicle and shut the door. He then asked A.E. "is that your boyfriend?" to which she replied "that's my ex.";

30. Defendant Nield then stated something to the effect that E.W. was not with A.E. He then told A.E. to "get out of there" because he had to lock the gates to the park. A.E. got into her vehicle and exited Rotary Park, with Defendant Nield exiting just behind her vehicle.

### FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS CITY OF HUNTINGTON AND JOHN DOES 1-7 (Negligence/Gross Negligence/Failure to Train and Supervise)

31. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

32. The Defendants were acting under the color or pretence of State law, customs, practices, usage or policy at all times mentioned herein by employing police

officers, supervisors or other such personnel and/or employees and had certain duties imposed upon it with regard to Plaintiffs;

33. The above incidents and Plaintiffs' resulting injuries, sufferings, and damages were proximately caused by the grossly negligent, reckless, willful and wanton acts of the Defendants in the following particulars:

- a. In failing to exercise reasonable or slight care to protect Plaintiffs from harm at the hands of its personnel, agents, officers, and/or employees;
- b. In failing to exercise reasonable or slight care to properly train and/or supervise its personnel, agents, offices, and/or employees[2];
- c. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure with regard to the hiring and evaluation of its police officers[3];
- d. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure necessary to ensure that members of the public are safe and protected from physical abuse and threatening behavior;

---

[2] On January 11, 2014, Defendant Nield responded to a call at St. Mary's Medical Center regarding a patient, Annie Earle. Ms. Earle was allegedly behaving erratically and ignoring instructions from hospital staff. Defendant Nield proceeded to restrain and hold Ms. Earle face down on the hospital floor, resulting in her death. As a result, Defendant Nield was named in a lawsuit claiming he used excessive force that caused the death of Ms. Earle. This incident put Defendants City of Huntington and John Does 1-7 on notice of Defendant Nield's inability to properly execute his duties and responsibilities as a law enforcement officer, specifically as it relates to interactions with women. Despite the warning signs presented by this incident, Defendants City of Huntington and John Does 1-7 failed to properly educate, train and supervise Defendant Nield in light of the deficiencies in the actions taken that resulted in Ms. Earle's death.

[3] State of West Virginia v. Foster "Pete" Bowen- A former Huntington police captain and commander of the juvenile crime bureau accused of molesting several young boys was found guilty on all 34 counts of sexual abuse, following a two-week-long trial in Cabell Circuit Court. Foster "Pete" Bowen, 81, was found guilty of 34 counts of sexual abuse and sexual assault. The jury deliberated for six hours. The trial began on April 18, 2011 and included emotional testimony from several of Bowen's victims. The incidents he was prosecuted for occurred between 1981 and 2003 at his Barboursville home and a cabin in Webster County. The boys ranged in age from 11 to 16 years old. On June 23, 2011 Cabell County Circuit Judge Paul T. Farrell sentenced Bowen to 302 years in prison, proclaiming that "You may have committed more acts of child rape and abuse than any person in the history of West Virginia, sir," Farrell said. "In fact, you may have committed more crimes against persons than anybody in the history of West Virginia.". During the trial of his case, Foster admitted to grabbing the penises of young boys as a form of reprimand. He claimed that this was accepted practice where he was from growing up in Webster County, West Virginia. It is also worth noting that five years earlier, two victims made complaints of sexual assault against Bowen to Cabell County deputies who never opened a file on the matter.

e. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure that would lead to the discovery of inappropriate, threatening actions by its employees and prevent the same from occurring;

f. In failing to exercise reasonable or slight care to make periodic and proper investigations and take remedial action as might be necessary to prevent inappropriate and/or threatening actions;

g. In failing to exercise reasonable or slight care to take appropriate time to follow-up, review and/or check compliance with policy, state law and/or existing orders;

h. In failing to exercise reasonable or slight care to take steps necessary to remove, fire and/or terminate the services of staff and/or personnel, including Defendant Nield, when they had actual and/or constructive notice of his propensities;

i. In failing to exercise reasonable or slight care to properly supervise Defendant Nield;

j. In failing to exercise reasonable or slight care to provide Plaintiffs with proper protection from abuse (both physical and mental) at the hands of their police officer when it had notice of their officer's propensities towards inappropriate and/or abusive behavior;

k. In conducting themselves in an egregious and arbitrary manner;

l. In threatening, physically assaulting and/or abusing Plaintiff;

m. In breaching their fiduciary duty of trust with regard to Plaintiff;

n. In failing to follow and adhere to local state and national standards, policies and procedures including the policies and procedures of the City of Huntington;

o. In failing to follow and adhere to the policies and procedures of the City of Huntington regarding threatening behavior;

p. In engaging in a pattern and practice of allowing and/or condoning inappropriate conduct on behalf of the City of Huntington;

    q.    In failing to sufficiently monitor and supervise employees of the City of Huntington;

    r.    In failing to have the appropriate policies and procedures in place to provide adequate supervision; and,

    s.    In failing to exercise even slight care to protect Plaintiffs from harm.

34. The injuries suffered by Plaintiffs at the hands of Defendant City of Huntington and Defendant Nield caused and continues to cause them damages to include and not be limited to medical expenses, permanent impairment, mental anguish, and pain and suffering. Therefore, Plaintiff is entitled to ACTUAL and CONSEQUENTIAL DAMAGES.

### FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT NIELD
### (Violation of Federal Civil 42 U.S.C. 1983 - Due Process Clause - 14th Amendment)

35. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

36. During the time period in question, Defendant Nield was acting under the color or pretense of State law, customs, practices, usage or policy as a sworn police officer of the City of Huntington and had certain duties imposed upon him with regard to Plaintiffs. Additionally, during the time period in question, Officer Nield was well aware of Plaintiffs' constitutional rights; including their right to due process, their liberty interests, and their right to be free of unjustified intrusions on personal security as protected by the Fourteenth Amendment;

37. The courts have consistently recognized the right against "unjustified intrusions on personal security" at the hands of the state to be one of the "historic liberties" protected by the Due Process Clause. *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). The above set forth facts show that Defendant Nield sexually assaulted Plaintiffs while wearing a police-issue badge and gun, and inside of his City of Huntington vehicle. As such, Defendant Nield imposed himself in such a way, as a sworn officer of the law, that Plaintiffs felt intimidated, coerced, and without choice but to comply with his demands. Despite

Plaintiffs' attempts to stop Defendant Nield, he was ultimately able to assert mental and physical control over Plaintiffs and proceeded to forcefully sexually assault them;

38. Plaintiffs' resulting injuries, sufferings, and damages were proximately caused by the intentional, reckless, willful and wanton acts of Defendant Nield;

39. As a direct result of the above actions of Defendant Nield, Plaintiffs have been injured and damaged in that they has been deprived of the rights, privileges and immunities afforded to the citizens of the State of West Virginia and the United States; have been subject to sexual assault, physical and psychological injury; have endured and will endure mental anguish and emotional distress; have incurred medical bills, and will incur medical bills in the future; have been deprived of the enjoyment of their life, thereby entitling them to an award of ACTUAL, CONSEQUENTIAL, PUNITIVE DAMGES, costs and reasonable attorney fees.

**FOR A THIRD CAUSE OF ACTION AGAINST**
**CITY OF HUNTINGTON AND JOHN DOES 1-7**
**(Violation of Federal Civil 42 U.S.C. 1983 – Supervisory Liability)**

40. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

41. During the time period in question, Defendants City of Huntington and John Does 1-7 were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as supervisors and commanding officers within the City of Huntington and had certain duties imposed upon them with regard to Plaintiffs. Additionally, during the time period in question, Defendants City of Huntington and John Does 1-7 were well aware of Plaintiffss constitutional rights, including their right to due process, their liberty interests, and their right to be free of unjustified intrusions on personal security as protected by the Fourteenth Amendment;

42. At all times relevant hereto, Defendants John Does 1-7 were supervisors within the City of Huntington, and as such, were responsible for the supervision of their subordinate officers, including but not limited to, Defendant Nield;

43. Defendants John Does 1 and 2, in their role as Chief of Police and Deputy Chief of Police, were policymakers for Defendant City of Huntington, and when enacting an implementing such policies, were acting with express authority from Defendant City of Huntington and the State of West Virginia;

44. Upon information and belief, Defendants John Does 1-7 possessed actual and/or constructive knowledge that Defendant Nield was the subject of prior investigations regarding allegations of excessive force, had prior disciplinary actions taken against him, and was not qualified to safely investigate and/or meet with potential female victims, including Plaintiffs;

45. Defendants City of Huntington and John Does 1-7, as Defendant Nield's supervising and commanding officers, possessed the power to prevent the actions of Defendant Nield. Plaintiffs allege Defendants authorized Defendant Nield's actions by consciously and intentionally failing to act or intervene;

46. All of the above-referenced failures are the responsibility of Defendants City of Huntington and John Does 1-7, who were deliberately indifferent to their responsibility to train and supervise the City of Huntington police officers, including Defendant Nield, to interact with the public and more specifically, women;

47. As the direct and proximate result of the above-mentioned unconstitutional actions of Defendants City of Huntington and John Does 1-7, Plaintiffs have been injured and damaged in that they have been deprived of the rights, privileges and immunities afforded to the citizens of the State of West Virginia and the United States; have been subjected to sexual assault, physical and psychological injury; have endured and will endure mental anguish and emotional distress; have incurred medical bills, and will incur medical bills in the future; have been deprived of the enjoyment of their lives, thereby entitling them to an award of ACTUAL and CONSEQUENTIAL DAMAGES, costs and reasonable attorney fees.

## FOR A FOURTH CAUSE OF ACTION AGAINST
## DEFENDANT NIELD
**(Assault and Battery)**

48. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

49. At the time of Plaintiffs' unlawful stop, arrest, and search, Defendant Nield placed Plaintiffs in apprehension of an immediate offensive contact with Plaintiffs' person in the course of effecting the unlawful search of Plaintiffs;

50. Defendant Nield then acted with the intent of making an offensive contact with the person of Plaintiffs and made said offensive contact by sexually assaulting Plaintiffs;

51. Defendant Nield made said offensive contact with Plaintiffs without Plaintiffs' consent;

52. As a direct and proximate cause of the offensive contact of Plaintiff by and through Defendant Nield, as well as the wilful, intentional and unlawful conduct of Defendant Nield, Plaintiffs suffered injury caused by Defendant Nield;

53. Consequently, Plaintiffs are entitled to damages, including but not limited to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES[4], and other relief as set forth herein.

## FOR A FIFTH CAUSE OF ACTION AGAINST
## DEFENDANT CITY OF HUNTINGTON AND DEFENDANTS JOHN DOES 1-7
**(Negligent Supervision)**

54. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

55. At the time of Plaintiffs' unlawful stop, arrest, and search, Defendant City of Huntington employed Defendant Nield in the capacity of Police Officer, granting Defendant

---

[4] *Criss v. Criss*, 177 W.Va. 749, 356 S.E.2d 620 (April 1987) - "In an action to recover for personal injuries alleged to have resulted in an assault, a declaration which alleges that the assault was wilful, intentional, and unlawful will support a recovery of punitive damages."

Nield the authority to act under the color of law in the name of the City of Huntington to enforce statutes and laws of the City of Huntington and the State of West Virginia;

56. At the time Defendant Nield was committing his unlawful stops, arrests, and searches against Plaintiffs, Defendant Nield was acting within the scope of his employment as an employee and agent for Defendant City of Huntington;

57. At the time of Plaintiffs' unlawful stop, arrest, search, and sexual assault, Defendant City of Huntington and Defendants John Does 1-7 already knew that Defendant Nield had killed an African-American female, Annie Earl, and unlawfully stopped, arrested, and physically assaulted others while on duty;

58. Further, at the time of Plaintiffs' unlawful stop, arrest, search, and sexual and physical assault, Defendant City of Huntington had several tools readily available to supervise, track, and monitor Defendant Nield's on-duty behavior and whereabouts, including but not limited to, Defendant Nield's in-car GPS, contact and warrant check logs and databases, and radio call-ins reports and records;

59. Defendant City of Huntington, through the exercise of ordinary care, knew or should have known of Defendant Nield's propensity for committing unlawful acts against women such as the Plaintiffs;

60. Nonetheless, Defendant City of Huntington negligently disregarded the obvious risks, and allowed Defendant Nield to operate an HPD patrol car and roam the streets in a college town near dorms and bars where this sexual predator could encounter intoxicated co-eds predominately during the overnight hours when witnesses were sparse, under the actual and apparent authority of the Huntington Police Department where he had free reign to unlawfully stalk, stop, arrest, search, and physically and sexually assault young females, including Plaintiffs;

61. As a direct and proximate cause of the actions of Defendant City of Huntington, Plaintiffs suffered offensive contact with their persons, by and through Defendant City of Huntington's duly authorized agent, Defendant Nield, and Plaintiffs suffered injury.

62. Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

### **FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT NIELD**
**(False Arrest/Imprisonment)**

63. Plaintiffs incorporate, repeat, and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein;

64. At the time of Plaintiffs' unlawful stop, arrest, and search, Defendant Nield unlawfully detained Plaintiffs, against their will, by impermissibly ordering Plaintiffs to enter his police car and impermissibly detaining them there while he unlawfully and invasively searched their persons without probable cause or a warrant authorizing either the seizure or search of Plaintiffs' persons;

65. Defendant Nield unlawfully restrained Plaintiffs without due and legal process, with Plaintiffs' full knowledge that they were being restrained, pursuant to Defendant Nield's unlawful detention and search of Plaintiffs' persons;

66. As a direct and proximate cause of Defendant Nield's actions, Plaintiffs A.E. and E.W. suffered offensive contact of their persons, and as a result suffered actual injury;

67. Consequently, Plaintiffs A.E. and E.W. are entitled to damages and other relief as set forth herein;

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants, both jointly and in combination thereof, for ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES, costs and reasonable attorney fees. Plaintiffs demand a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

Additionally, Plaintiff prays this Honorable Court will grant the following:

l. All actual damages suffered by Plaintiffs, including those emanating from physical pain, past and future mental anguish and emotional distress in excess of seventy-five thousand dollars ($75,000.00).

    2.       Damages for violations of Plaintiffs' constitutional rights.

    3.       Punitive damages to the extent permitted by law.

    4.       A declaration that that the detention and search of Plaintiffs' persons, as described herein, were unconstitutional as a matter of law.

    5.       Injunctive relief requiring Defendant City of Huntington and HPD to promulgate and implement policies and procedures to prevent such deprivations of constitutional rights in the future, including an investigative unit specifically established to receive, investigate and report allegations of sexual assault by HPD officers directly to the Cabell County Prosecuting Attorney and United States Attorney for the Southern District of West Virginia.

    6.       Injunctive relief requiring Defendant City of Huntington to train HPD officers regarding receiving, investigating and reporting allegations of sexual assault by HPD officers directly to the Cabell County Prosecuting Attorney and United States Attorney for the Southern District of West Virginia.

    7.       Injunctive relief requiring Defendant City of Huntington and HPD to equip all of its officers with body cameras that are unable to be tampered with or deactivated, as well as mandating that all body cameras are to remain active and recording during the entire duration of any and all stops, detentions and arrests conducted by HPD officers.

    8.       An award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and any other applicable provision of law.

    9.       The appointment of a private citizen to each of the Huntington Police Department Disciplinary Review Board, Departmental Hearing Board and Civil Service Hearing Board for all police misconduct reviews, with the findings of said reviews, the identify of the officer being reviewed, and all relevant charges being published as a matter of public record.

    10.      Any and all further relief this Honorable Court deems just and equitable.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY.**

Dated: August 4, 2017

*Respectfully submitted,*

**A.E. and E.W.**

**By Counsel**

/s/ Omar D. Ahmad
Timothy L. Eves, Esquire (WV Bar Number 8541)
Omar D. Ahmad (WV Bar Number 10804)
**EVES LAW FIRM, PLLC**
5348 US Route 60 East
Huntington, West Virginia 25705
Telephone (304) 736-9999
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**A.E. and E.W.,**

    *Plaintiffs*,

vs.                                                          CIVIL ACTION NO: 3:17-cv-01885
                                                                  JUDGE: Robert C. Chambers

**JOSHUA NIELD;**
**CITY OF HUNTINGTON, WEST VIRGINIA; and**
**JOHN DOES 1-7, INDIVIDUALS,**

    *Defendants*.

## CERTIFICATE OF SERVICE

    I, Omar D. Ahmad, counsel for Plaintiffs, hereby certify that on August 4, 2017, I served a true and correct copy of the foregoing **"*Amended Civil Complaint*"** upon the following individuals:

Lee Murray Hall, Esq. [WV Bar #6447]
Nathanial A. Kuratomi, Esq. [WV Bar #10328]
**Jenkins Fenstermaker, PLLC**
P.O. Box 2688
Huntington, WV 25726-2688
*Counsel for Defendant City of Huntington*

Steven K. Nord, Esq. [WV Bar #2748]
Ryan Q. Ashworth, Esq. [WV Bar #10451]
**Offut Nord Burchett, PLLC**
949 Third Avenue, Suite 300
P.O. Box 2868


Huntington, WV 25728-2868
*Counsel for Defendant Joshua Nield*

/s/ Omar D. Ahmad